USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __03/25/2021__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x
IVAN LOPEZ and KEVIN CAMPOS,                            :
                                                        :
                                        Plaintiffs,     :
                                                        :        **18-cv-06033 (ALC)**
                        -against-                        :
                                                        :        **OPINION & ORDER**
                                                        :
MNAF PIZZERIA, INC. and MUSA                            :
NESHEIWAT,                                              :
                                                        :
                                        Defendants.     :
-------------------------------------------------------------------- x
ANDREW L. CARTER, JR., District Judge:

Plaintiffs Ivan Lopez and Kevin Campos (hereinafter, "Plaintiffs") bring this action

against MNAF Pizzeria, Inc. ("MNAF") and Musa Nesheiwat (collectively, "Defendants")

asserting claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*,

the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190, 650 *et seq.*, and the New York

Wage Theft Prevention Act, N.Y. Lab. Law § 195.

Plaintiffs filed a motion for partial summary judgment as to Defendant's liability on all

claims. For the reasons set forth below, Plaintiffs' motion for partial summary judgment is

**GRANTED** in part and **DENIED** in part.

**BACKGROUND**

A.      **Local Rule 56.1**

Local Rule 56.1 requires motions for summary judgment be accompanied by a list of

"material facts as to which the moving party contends there is no genuine issue to be tried."

Local Civil Rule 56.1(a). Should the nonmoving party wish to contest the claims in a Rule 56.1

Statement, the nonmoving party must respond to each of the statement's paragraphs and include,

if necessary, a statement of additional material facts that demonstrate a genuine issue for trial.

Local Civil Rule 56.1(b). A nonmoving party's failure to respond to a Rule 56. 1 Statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible. *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (per curiam). Courts have granted summary judgment for failures to respond after assuring themselves that Rule 56's other requirements have been met. *See, e.g.*, *Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000) (per curiam) (affirming district court's decision to grant summary judgment in favor of defendants following plaintiffs' failure to deny defendants' allegations in accordance with Local Rule 56.1).

While Plaintiffs provided a properly supported statement of undisputed material facts as required by Local Rule 56.1(a), ECF No. 85, Defendants did not submit a statement of disputed material facts pursuant to Local Rule 56.1(b) with their Opposition to Plaintiff's Motion for Partial Summary Judgment, ECF No. 92. Instead, Defendants submitted their own statement of allegedly undisputed facts. ECF No. 94.

A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules and may opt to "conduct an assiduous review of the record" where one of the parties fails to properly file a Rule 56.1 Statement. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175-78 (2009). Given Defendants' failure to comply with Local Rule 56.1, the Court may deem admitted all of Plaintiff's asserted facts that Defendants failed to properly controvert. *See, e.g.*, *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (collecting cases). The Court will instead "take a practical approach when evaluating the instant motion . . . and base its assessment of the underlying summary judgment motion primarily on the supporting evidence submitted by the parties." *Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d

420, 424 n.2 (E.D.N.Y. 2016) (citing *DeRienzo v. Metro. Transp. Auth., Metro N. Commuter R.R.*, 237 F. App'x 642, 646 (2d Cir. 2007)), *cert. denied*, 137 S. Ct. 2135 (2017).

### B. Facts and Procedural History

The below factual background is based on the Court's review of the depositions, declarations, exhibits, pleadings, and other evidence submitted by the parties.[1] The Court has determined that the following facts are beyond genuine dispute and supported by admissible evidence unless otherwise noted.

Defendant MNAF is a New York corporation that operates a pizzeria called "Sal's Pizzeria" in the Bronx, New York. Pls.' R. 56.1 Stmt. ¶¶ 1-3. The pizzeria has annual revenues of over $500,000. *Id.* ¶ 4. Defendant Nesheiwat has been a 49% owner since 2011. *Id.* ¶ 8. He actively manages the pizzeria on a day-to-day basis and has the power to hire and fire employees at MNAF, set wages and schedules, and maintain employee records. *Id.* ¶¶ 9-10. He has exercised that authority, including with respect to Plaintiffs. *Id.* ¶¶ 9, 14, 22.

---

[1] Plaintiffs submitted their Requests for Admissions (RFAs) in support of their motion for partial summary judgment and cited to them in their statement of undisputed material facts. According to Plaintiffs, they served the RFAs on Defendants on August 26, 2019, but did not receive responses until October 16, 2019. Stein Decl. ¶¶ 7-8. Under Fed. R. Civ. P. 36, a party may serve on any other party written requests for admissions of the truth of statements of fact, or the application of law to facts, pertaining to the pending action. The matter about which an admission is requested "is admitted unless, within 30 days after being served, the party to whom the request is directed serves . . . a written answer or objection addressed to the matter . . . ." Fed. R. Civ. P. 36(a)(3). Additionally, a "matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). "Notwithstanding the automatic effect of the time limitations in Rule 36(a), the court is given some discretion in Rule 36(b) to make exceptions in appropriate circumstances." *Healthfirst, Inc. v. Medco Health Sols., Inc.*, No. 03-cv-5164, 2006 WL 3711567, at *4 (S.D.N.Y. Dec. 15, 2006) (admitting defendants' responses to RFAs where plaintiffs had not shown they would be prejudiced by the admission). Rule 36(b) states that "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." The Court deems that admitting Defendants' responses to Plaintiffs' RFAs would "promote the presentation of the merits of the action" and is not persuaded it would prejudice Plaintiffs in "maintaining or defending the action on the merits." As such, Defendants' responses to Plaintiffs' RFAs are deemed admitted.

Plaintiff Lopez worked as a delivery person at MNAF from January 2014 through November 2014 and from approximately May 2015 through October 2017. *Id.* ¶¶ 12, 13, 15-17.[2] Plaintiff Lopez's exact schedule is disputed. According to Plaintiff Lopez, he usually worked from 11:00 a.m. to 11:00 p.m. from Monday through Saturday, though he sometimes worked more because he had to cover someone else's shift on Sunday. Stein Decl. Ex. A ("Lopez Decl."), ¶¶ 12-13. According to Defendants, Plaintiff Lopez usually worked five to six days a week from 11:00 a.m. to 8:00 p.m. or 12:00 p.m. to 9:00 p.m. and never worked on Sundays. Stein Decl. Ex. H ("Nesheiwat Dep.") at 38:15-38:17, 39:7-39:14, 83:20-84:23. Plaintiff Lopez was paid hourly wages via cash and check on a weekly basis, but did not receive a paystub from Defendants. Pls.' R. 56.1 Stmt. ¶¶ 29-31, 33. In 2015, Plaintiff Lopez was paid $5.00 per hour, but subsequently received a raise to $7.00 per hour. *Id.* ¶¶ 39-40.[3] He also received tips. *Id.* ¶ 41.

According to Plaintiff Campos, he worked at MNAF as a delivery person from August 2015 through September 2017. Stein Decl. Ex. B ("Campos Decl."), ¶ 7.[4] During this time, Plaintiff Campos regularly worked from 5:00 p.m. to 11:00 p.m. on Monday through Thursday, and from 11:00 a.m. to 11:00 p.m. on Sundays. *Id.* ¶ 60.[5] He sometimes worked extra hours or an extra day in any given week. *Id.* ¶¶ 61-63. Plaintiff Campos was paid hourly wages via cash on a

---

[2] Defendants dispute the exact dates of Plaintiff Lopez's first period of employment with MNAF. *See* Defs.' Resp. to Req. for Admis. ¶¶ 2-3.

[3] While Plaintiffs dispute that he was ever paid $7.00, they accept this as true for the purposes of this motion.

[4] The exact dates of Plaintiff Campos's employment are disputed. Defendant Nesheiwat testified that Plaintiff Campos worked for Defendants from the end of 2015 to the end of 2016. Nesheiwat Dep. at 58:4-58:24.

[5] There appears to be a discrepancy between Plaintiff Campos's testimony in his declaration and at his deposition. In his declaration, he stated that "[o]n Monday through Thursday, [he] would work from 5:00 p.m. to 11:00 p.m." and "[o]n Sundays [he] would work from 11:00 a.m. to 11:00 p.m." Stein Decl. Ex. B ("Campos Decl."), ¶ 11; *see also id.* ¶ 13. At his deposition, Plaintiff Campos testified that the majority of the time his schedule was "from 5:00 to 10:00, Monday through Thursday, 5:00 p.m. to 11, and then Friday, Saturdays, they closed at 12:00. So it was 5:00 to 12:00 Friday, Saturdays. And then Sundays since it was just me . . . I worked from 11:00 to 11:00." Martone Decl. Ex. D. ("Campos Dep.") at 58:2-58:7; *see also id.* 59:22-59:24. Since Plaintiffs' Rule 56.1 Statement cites to Plaintiff Campos's declaration, and the Defendants did not properly oppose it, the Court will deem that statement admitted as true. Pls.' 56.1 Stmt. ¶ 60. *See also* Nesheiwat Dep. at 60:25-61:11 (stating that Plaintiff Campos worked "like, from 5:00 to 10:00, 11:00 depending . . . I know he worked around, like, 40 hours").

weekly basis, but did not receive a paystub from Defendants. *Id.* ¶¶ 44-47. When he began

working at MNAF, he was paid $5.00 per hour, but subsequently received a raise to $6.00 per

hour. *Id.* ¶¶ 52, 53.[6] He also received tips. *Id.* ¶ 54.

When Plaintiffs were hired, they did not fill out any paperwork and did not receive

notices describing the "parameters" of their pay or asked to sign an acknowledgement of such

notices. *Id.* ¶¶ 71-72, 75-76. Plaintiffs also did not receive any written information about

MNAF's tip policies and were just told that their pay would be $5.00 per hour plus tips. *Id.*

¶¶ 73-74, 77-78.

Defendants were aware of the minimum wage and overtime obligations of an employer.

*Id.* ¶¶ 83-84. However, it is undisputed that Defendants failed to keep track of what they paid

employees, failed to keep accurate records of the time worked by employees,[7] failed to keep

records of when employees worked for them, and failed to keep records of what tips each

employee received. *Id.* ¶¶ 18, 24, 27-28, 32, 42-43. Plaintiffs also used their own cars to make

deliveries, but Defendants never reimbursed them for gas, mileage, or maintenance. *Id.* ¶¶ 81-82;

Defs.' Resp. to Req. for Admis. ¶ 51.

Plaintiff Ivan Lopez initiated this action on July 3, 2018. ECF No. 1 ("Compl."").

Defendants answered the Complaint on July 25, 2018. ECF No. 11. On July 31, 2018, this case

was referred to court-ordered mediation. ECF No. 13. A mediation session was held on October

30, 2018, but was unsuccessful in resolving any issue in the case. ECF No. 16. On February 19,

2019, Plaintiffs filed a motion to amend the Complaint and join Plaintiff Kevin Campos, ECF

No. 22, which this Court granted on April 25, 2019, ECF No. 30. The case was then referred to

---

[6] While Plaintiffs dispute that he was ever paid $6.00, they accept this as true for the purposes of this motion.
[7] In approximately 2017, Defendants began to use time cards and threw away old written records of time worked by Plaintiffs. *See* Nesheiwat Dep. at 26:14-26:19, 64:21-65:15. However, the time cards they used also appear to have been inaccurate. *Id.* at 98:4-98:14.

5

Magistrate Judge Ona T. Wang for general pretrial. ECF No. 31. Plaintiffs filed an Amended Complaint on May 1, 2019. ECF No. 33. Defendants answered the Amended Complaint on May 31, 2019. ECF No. 35. Discovery was due to be completed by October 25, 2019, ECF No. 36, but this deadline was subsequently extended to November 1, 2019, ECF Nos. 49, 67. A settlement conference was held on December 18, 2019, but was unsuccessful. On March 13, 2020, the Court granted Plaintiffs leave to file a motion for summary judgment. ECF No. 78. On May 18, 2020, Plaintiffs filed a motion for partial summary judgment as to liability and supporting memorandum of law ("Pls.' Mot.").[8] ECF Nos. 82, 84. On July 6, 2020, Defendants filed their opposition to Plaintiffs' motion for partial summary judgment ("Defs.' Opp."), ECF No. 92, and on July 21, 2020, Plaintiffs filed a reply in further support of their motion ("Pls.' Reply"), ECF No. 95.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *See Chartis Seguros*

---

[8] On June 9, 2020 the Court denied Defendants' request to deem Plaintiffs' motion for partial summary judgment as moot due to their failure to timely file the motion. ECF No. 89.

*Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013);
*see also Anderson*, 477 U.S. at 248 (holding that a fact is material if it would "affect the outcome
of the suit under the governing law"). "Where the moving party demonstrates the absence of a
genuine issue of material fact, the opposing party must come forward with specific evidence
demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654
F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation marks omitted).

In deciding a summary judgment motion, courts must construe the evidence in the light
most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara
Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citing to
*Anderson*, 477 U.S. at 255). Courts may not assess credibility nor may they decide between
conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of
New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of
evidence in support of the plaintiff's position will be insufficient; there must be evidence on
which the jury could *reasonably* find for the plaintiff." *Id*. (quoting *Anderson*, 477 U.S. at 252)
(emphasis in original).

When considering a motion for summary judgment, a district court "must also be mindful
of the underlying standards and burdens of proof . . . because the evidentiary burdens that the
respective parties will bear at trial guide district courts in their determination of summary
judgment motions." *Maco v. Baldwin Union Free Sch. Dist.*, 249 F. Supp. 3d 674, 678 (E.D.N.Y.
2017) (quoting *SEC v. Meltzer*, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006)) (internal quotation
marks omitted), *aff'd*, 726 F. App'x 37 (2d Cir. 2018). "Where the non-moving party would bear
the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he

can point to an absence of evidence to support an essential element of the non-movant's claim."
*Id.* (quoting *Meltzer*, 440 F. Supp. 2d at 187) (internal quotation marks omitted).

## DISCUSSION

There are several issues before the Court: (1) whether Defendants paid Plaintiffs the
minimum wage under the FLSA and the NYLL; (2) whether Defendants paid Plaintiffs proper
overtime compensation under the FLSA and the NYLL; (3) whether Plaintiffs are entitled to
summary judgment on their unlawful deduction claims under the FLSA and the NYLL;
(4) whether Plaintiffs are entitled to summary judgment on their spread of hours claims pursuant
to the NYLL; (5) whether Plaintiffs are entitled to summary judgment on their Wage Theft
Prevention Act claims; (6) whether Plaintiffs are entitled to liquidated damages under the FLSA
and the NYLL; (7) whether Plaintiffs are entitled to prejudgment interest under the NYLL; and
(8) whether Plaintiffs are entitled to attorneys' fees and costs.

### I.      Defendant Nesheiwat's Individual Liability Under the FLSA and the NYLL

Plaintiffs assert that Defendant Nesheiwat qualified as their "employer" at MNAF, and
therefore can be held individually liable under the FLSA and the NYLL. The FLSA defines
"employer" as "any person acting directly or indirectly in the interest of an employer in relation
to an employee." 29 U.S.C. § 203(d). The Second Circuit treats the term "employer" pursuant to
the FLSA as a "flexible concept to be determined on a case-by-case basis by review of the
totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-
42 (2d Cir. 2008).

Courts utilize the "economic reality" test to determine whether a particular individual is
an employer. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999), *holding
modified by Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003). This four-factor test

considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).

It is undisputed that Defendant Nesheiwat (and MNAF) employed Plaintiffs. *See* Defs.' Opp. at 3 ("[T]he Defendants do not dispute that the plaintiffs were employees."). In fact, Defendant Nesheiwat testified at his deposition that he owned 49% of MNAF, had the power to hire and fire employees, set the schedules for employees, and decided how much to pay employees. Nesheiwat Dep. at 14:5-14:19, 20:8-20:19. Defendant Nesheiwat also testified that he paid employees and maintained employment records. *Id.* at 19:23-20:7 (testifying that if he was the one there he would pay the employees), 23:9-24:25 (testifying that he kept time cards in a bag in an office in the basement). Thus, Plaintiffs have shown that Defendant Nesheiwat qualified as their employer and that he is personally liable for the Plaintiffs' claimed violations of the FLSA and the NYLL.

## II.    Plaintiffs Were Covered Employees Under the FLSA and the NYLL

To recover minimum and overtime wages under the FLSA, Plaintiffs must either qualify as employees engaged in commerce or in the production of goods for commerce ("individual coverage"), or their employer must have engaged in commerce or in the production of goods for commerce during their employment ("enterprise coverage"). *See* 29 U.S.C. §§ 206, 207. Enterprise coverage applies to employers engaged in commerce who gross at least $500,000 in annual sales. 29 U.S.C. § 203(s)(1)(A)(ii). Enterprise coverage has been interpreted to apply broadly: "virtually every enterprise in the nation" that meets the annual sales requirement would qualify under the FLSA because they almost certainly use items that moved in interstate

commerce. *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)

(Sotomayor, J.). Coverage under the NYLL substantively mirrors that under the FLSA, except

that the NYLL does not have minimum amount of sales or nexus to interstate commerce

requirements. *See Tackie v. Keff Enters. LLC*, No. 14-cv-2074, 2014 WL 4626229, at *2 n.2

(S.D.N.Y. Sept. 16, 2014).

As discussed previously, it is undisputed that Plaintiffs were employed by Defendants. It

is also undisputed that Defendants met the $500,000 revenue threshold and thus qualified as an

enterprise engaged in commerce. *See* Stein Decl. Ex. G ("[T]he $500,000 FLSA threshold is

deemed admitted."). In their opposition, Defendants assert that "[D]efendants' pizzeria is located

in the Bronx, NY and there [sic] commerce is exclusive [sic] in New York City." Defs.' Opp. at

3-4. It is inconceivable that a restaurant with over $500,000 in annual sales did not use materials

originating from out of state. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19,

33 (E.D.N.Y. 2015); *see also Huerta v. Victoria Bakery*, No. 10-cv-4754, 2012 WL 1107655, at

*2 (E.D.N.Y. Mar. 30, 2012). There is no evidence in the record that suggests otherwise.

Accordingly, Plaintiffs qualify as covered employees under the FLSA and the NYLL for

the purposes of analyzing their claims.

### III.    Calculation of Plaintiffs' Hours

Under the FLSA, an employee bears the burden of proving they were not properly

compensated for their work. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87

(1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463

F.2d 1289, 1293 (D.C. Cir. 1972). The employee can meet this burden by producing their

employer's records. *See id.* at 687. However, when "the employer's records are inaccurate or

inadequate" and "the employee cannot offer convincing substitutes," the employee can meet

their burden of proof by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*; *see also Liu v. Jen Chu Fashion Corp.*, No. 00-cv-4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004) ("[I]n the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct."); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. 2017) ("Where an employer's payroll records are inaccurate or incomplete, courts apply a burden-shifting scheme to determine whether an employee has established that he was underpaid, and what damages he suffered."), *aff'd* 752 F. App'x 33 (2d Cir. 2018).

The NYLL framework is similar, except § 196-a provides that "where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Gamero*, 272 F. Supp. 3d at 498 (citing *Canelas v. World Pizza, Inc.*, No. 14-cv-7748, 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017) (quoting N.Y. Lab. Law § 196-a(a))). The NYLL gives Defendants a "more demanding" burden. *Id.*

Here, Plaintiff Lopez testified that he regularly worked from Monday through Saturday from 11 a.m. through 11 p.m. *See, e.g.*, Martone Decl. Ex. C ("Lopez Dep.") at 18:7-18:22; Lopez Decl. ¶ 12. Plaintiff Campos testified that he regularly worked from Monday through Thursday from 5:00 p.m. to 11:00 p.m. and on Sundays from 11:00 a.m. to 11:00 p.m. and that he sometimes worked extra hours or an extra day in a given week. *See, e.g.*, Martone Decl. Ex. D ("Campos Dep.") at 14:1-14:20; Stein Decl. Ex. B ("Campos Decl."), ¶¶ 11, 13. He also testified that Plaintiff Lopez usually left earlier than him, though they did overlap. *See, e.g.*, Campos Dep.

at 83:1-83:13, 109:1-113:19. Thus, a reasonable inference can be drawn from Plaintiffs' own evidence that Plaintiff Lopez was not working until 11:00 p.m. on the nights that Plaintiff Campos was working. However, even assuming that Plaintiffs had zero overlap in the hours they worked, Plaintiff Lopez still worked a minimum of forty-eight hours a week (11:00 a.m.-5:00 p.m., Monday to Thursday and 11:00 a.m.-11:00 p.m., Friday and Saturday), and Plaintiff Campos worked a minimum of thirty-six hours a week (5:00 p.m.-11:00 p.m., Monday to Thursday and 11:00 a.m. to 11:00 p.m., Sunday).

The inadequacy and inaccuracy of the records maintained by Defendants is undisputed. *See, e.g.*, Nesheiwat Dep. at 26:20-27:3 (noting that he did not have records of employee pay); 40:16-40:22 (noting that Defendants only began using time cards "a couple of years ago" and that before that there was "no system for tracking when employees worked"); 64:21-66:4 (noting that he threw away records of Plaintiffs' pay from before the time-card system was implemented); 93:9-93:16 (noting that some of the time cards did not have dates on them so there was no way to tell when they were from); 98:4-98:14 (stating that the time cards had "inaccurate entries on them"). Thus, Plaintiffs' testimony as to their recollection of the hours worked is sufficient to meet their burden at the summary judgment stage. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).

The burden then shifted to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 69 (2d Cir. 1997) (quoting *Anderson*, 328 U.S. at 687-88) (internal quotation marks omitted). Defendants have plainly failed to do this. In fact, according to Defendant Nesheiwat, Plaintiff Lopez generally worked five or six days a week and "was supposed to work from 11:00 to 8:00,

and then when he don't [sic] come in at 11:00, he comes in at 12:00 and he stays from 12:00 to 9:00." Nesheiwat Dep. at 38:15-38:17, 39:7-39:14; *see also id.* at 39:15-39:20 (noting that Plaintiff Lopez "always left at 8" and that's why Plaintiff Campos "works from 5:00 to close"). This supports the conclusion that Plaintiff Lopez worked approximately forty-five to fifty-four hours a week (nine hours per day x five or six days a week), and does not "negative" the reasonableness of the inference to be drawn from Plaintiffs' evidence.

Additionally, this testimony also supports Plaintiff Campos's testimony that he regularly worked from 5:00 p.m. until 11:00 p.m., Monday through Thursday and a full day on Sunday. *See also* Nesheiwat Dep. at 60:25-61:8 (stating that Plaintiff Campos worked "like, from 5:00 to 10:00, 11:00 depending . . . I know he worked around, like, 40 hours"), 66:13-66:17 (Q: "Did Mr. Campos ever work a full day?" A: "One day a week . . . I think Sundays."), 67:17-67:24 (stating that Plaintiff Campos worked from 12:00 p.m. to 10:00 p.m. on Sundays). Defendant Nesheiwat also testified that Plaintiff Campos sometimes covered for Plaintiff Lopez, supporting Plaintiff Campos's testimony that he sometimes worked extra hours or an extra day in a given week. *See id.* at 61:23-63:6. Defendant's testimony as to the hours worked by Plaintiff Campos supports rather than "negative[s]" the reasonableness of the inference to be drawn from Plaintiffs' evidence.

Defendants may not use the time cards they attached to the attorney declaration in support of their opposition to create a genuine issue of fact. *See* Martone Decl. Exs. F, G. It is a well-established proposition of law that a party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment, absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 924 (2d Cir. 1985); *see also Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("only admissible evidence

need be considered by the trial court in ruling on a motion for summary judgment," and the Federal Rules of Evidence govern such admissibility). Defendants have not made such a showing. "The principles governing admissibility of evidence do not change on a motion for summary judgment." *Raskin*, 125 F.3d at 66. Business records are not admissible unless they are introduced in a manner that identifies them and establishes they are admissible pursuant to Federal Rule of Evidence 803(6), typically through a custodian's affidavit. *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, No. 04-cv-2293, 2007 WL 74304, at *3 (E.D.N.Y. Jan. 8, 2007); *see also Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) ("[A]t the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian . . . ."), *cert. denied*, 534 U.S. 955 (2001).

Because Defendants attached the time cards as standalone exhibits to the attorney declaration in support of Defendants' opposition, the Court may not rely on these documents to decide the instant motion. *See, e.g.*, *Flaherty v. Coughlin*, 713 F.2d 10, 14 (2d Cir. 1983) (finding "verification . . . a prerequisite to a grant of summary judgment" where motion was "accompanied by a variety of relevant documents but without verification that they were authentic or that they constituted all the relevant documents in the defendants' possession"), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see also Singh v. Bay Crane Servs., Inc.*, No. 11-cv-720, 2013 WL 5655931, at *2 n.4 (E.D.N.Y. Oct. 11, 2013) (stating that while documents "appear to be admissible business records, they are not self-authenticating, and the declaration of [plaintiff's] attorney does not provide the Court with all the information necessary to establish their admissibility under Federal Rule of Evidence 803").

Therefore, the Court finds that Plaintiff Lopez worked at least forty-eight hours a week and that Plaintiff Campos worked at least thirty-six hours a week (and over forty hours some weeks).

### IV.   Minimum Wage Claims

#### A.  Defendants Did Not Pay Plaintiffs Minimum Wages

Both the FLSA and the NYLL require employers to pay their employees an hourly wage equal to or greater than the statutorily required amount. 29 U.S.C. § 206(a); N.Y. Lab. Law § 652. Since 2009, the minimum wage under the FLSA has been $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). During the relevant period, the minimum wage under the NYLL has been as follows:

- $8.00 from December 31, 2013 through December 30, 2014;
- $8.75 from December 31, 2014 through December 30, 2015;
- $9.00 from December 31, 2015 through December 30, 2016;
- $10.50 from December 31, 2016 through December 30, 2017 (for employers of ten or less employees).

N.Y. Lab. Law § 652.

It is undisputed that Plaintiffs' hourly wages while they worked at MNAF were less than the mandatory minimum statutory rate. *See* Nesheiwat Dep. at 52:14-53:2 (testifying that Plaintiff Lopez's rate of pay when he worked for MNAF was between $5 and $7 an hour); *id.* at 63:7-15 (testifying that Plaintiff Campos's rate of pay when he worked for MNAF was between $5 and $6 an hour).

Defendants conclusorily assert that the evidence shows "that the wages were above minimum wage and therefore there were no violations of the FLSA and NYLL with regards to minimum wage." Defs.' Opp. at 4; *see also* Martone Decl. Ex. B. ("Vazquez Decl."), ¶¶ 16, 35 (stating that Plaintiffs "always made more than minimum wage"). They appear to believe that

this is the case because they were entitled to take advantage of the tip credit under the FLSA and the NYLL. Defs.' Opp. at 4-6. Defendants are mistaken.

### B.   Defendants Are Not Entitled to Claim a Tip Credit Under the FLSA or the NYLL

Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage. *See* 29 U.S.C. §§ 203(m), 206(a)(1); 12 N.Y.C.R.R. § 146-1.3(b) (effective Jan. 1, 2011); *Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 239-40 (2d Cir. 2011). This allowance against the minimum cash wage is known as a "tip credit." Under both the FLSA and the NYLL, the employer must show they complied with the tip credit requirements. *Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665, 672-73 (S.D.N.Y.), *appeal dismissed*, 17-2332 (2d Cir. 2017). The FLSA and the NYLL have slightly different requirements.

Under the FLSA, a "tipped employee" is "any employee engaged in an occupation in which [they] customarily and regularly receive[ ] more than $30 a month in tips." *Gamero*, 272 F. Supp. 3d at 500 (quoting 29 U.S.C. § 203(t)) (internal quotation marks omitted). A "court[ ] must determine whether the employee's job is historically a tipped occupation and whether [they have] more than '*de minimis*' interaction with customers as a part of [their] employment." *Id.* (quoting *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 467. (S.D.N.Y. 2015)).

The FLSA also precludes employers from applying a tip credit against an employee's wages unless the employer notified the employee of the statute's tip credit provisions and the employee retains all their tips. *Gamero*, 272 F. Supp.3d at 500. The FLSA does not require the notification be in writing, but employers must notify employees of their intention to treat tips as satisfying part of the employer's minimum wage obligations. *Id.* at 501; *Copantitla v. Fiskardo*

*Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011). Courts strictly construe this notice

provision and normally require employers to take affirmative steps to inform employees of the

employer's intent to claim the tip credit. *Perez v. Lorraine Enters., Inc.*, 769 F.3d 23, 27 (1st Cir.

2014); *see, e.g.*, *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 298 (6th Cir. 1998);

*Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3d Cir. 1994); *Hart v. Rick's Cabaret Int'l, Inc.*,

967 F. Supp. 2d 901, 934 (S.D.N.Y. 2013); *Lanzetta v. Florio's Enters., Inc.*, 763 F. Supp. 2d

615, 623 (S.D.N.Y. 2011).

The employer "bear[s] the burden of showing that they satisfied the FLSA's notice

requirement by, for example, providing employees with a copy of § 203(m) and informing them

that their tips will be used as a credit against the minimum wage as permitted by law." *He v.

Home on 8th Corp.*, No. 09-cv-5630, 2014 WL 3974670, at *5 (S.D.N.Y. Aug. 13, 2014)

(internal citations and quotation marks omitted); *see, e.g.*, *Copantitla*, 788 F. Supp. 2d at 288. "If

the employer cannot show that it has informed employees that tips are being credited against

their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage

. . . ." *Reich*, 28 F.3d at 403 (citing *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1322-23 (1st

Cir. 1992)).

Under the NYLL, a "tipped employee" is defined as "a service employee or food service

worker [who] receives enough tips and . . . has been notified of the tip credit as required in

section 146-2.2 of [Title 12 of the NYCRR]." 12 N.Y.C.R.R. § 146-1.3. The statute also requires

an employee to receive a wage at least equivalent to the hourly wages set by the statute. *Id*. The

NYLL also has a notice requirement, but the NYLL requires the notification be written in the

employee's primary language. 12 N.Y.C.R.R. § 146-2.2(a)(2); *Gamero*, 272 F. Supp. 3d at 501.

In addition to notice, New York also requires employers to "establish, maintain and preserve for

at least six years weekly payroll records" that show the "tip credits, if any, claimed as part of the minimum wage." 12 N.Y.C.R.R. § 146-2.1(a)(9) (effective Jan. 1, 2011).

Here, it is undisputed that Plaintiffs worked as delivery men at MNAF and received tips. However, Defendants are ineligible to claim the tip credit under the FLSA. Defendants testified that when Plaintiffs were hired, they were "fully informed that [they] would get regular wages plus full tips." *See* Martone Decl. Ex. A ("Nesheiwat Decl."), ¶¶ 7, 25; *see also* Vazquez Decl. ¶¶ 11, 31; Nesheiwat Dep. at 78:11-79:2 (stating that when Plaintiffs first started they were informed that they would get paid $5.00 an hour and keep all the tips). However, an employer merely telling the employee he will be receiving tips in addition to regular wages is insufficient to comply with the requirements to claim the tip credit pursuant to FLSA. *See Copantitla*, 788 F. Supp. 3d at 288.

Moreover, Plaintiffs testified that Defendants never spoke to them about taking a tip credit and that they never received a written tip credit notice. Lopez Decl. ¶¶ 11, 24 ("When Mr. Nesheiwat hired me, he never told me anything about my pay except that I would receive $5.00 per hour and I could keep the tips from my deliveries . . . [and] I was not given any sort of notice explaining to me the basis of my wages, or asked to sign any notice like that, or any other paperwork."); Campos Decl. ¶¶ 9, 24 (same). Defendants also testified that they did not have records of the tips each Plaintiff received. Nesheiwat Dep. at 80:10-80:14 (Q: "They didn't report to you how much they got in cash tips?" A: "No. I know they used to be happy at the end of the night. They used to tell me how much they used to make."); *see also id.* at 81:19-82:11 ("I have every single receipt from all the credit cards for the last eight years. I have piles of it. I just don't know who's who.").

There is no genuine issue of material fact as to Defendants' compliance with either the FLSA or the NYLL, and thus, the Court finds that Defendants cannot claim a tip credit. Therefore, the Court grants Plaintiffs' motion for partial summary judgment as to liability on Plaintiffs' minimum wage claims.[9]

## V.  Overtime, Unlawful Deductions and Spread of Hours Claims

### A.  Overtime Claims

The FLSA requires employers to pay non-exempt employees at a rate not less than one and one-half times their regular rate of pay for any hours worked over forty within a workweek. 29 U.S.C. § 207(a)(1).[10] The NYLL also requires employers to compensate employees at one and one-half times the employee's regular rate for hours worked in excess of forty per week. *See* N.Y. Lab. Law § 650 *et seq.*[11]

Here, it is undisputed that Defendants violated the FLSA and the NYLL by failing to pay Plaintiffs the appropriate overtime compensation. As discussed above, Plaintiff Lopez established that he worked at least forty-eight hours a week and Plaintiff Campos established that he worked over forty hours some weeks. *See also* Defs.' Resp. to Req. for Admis. ¶¶ 16, 18 (admitting that during the course of their employment with Defendants, there were weeks when

---

[9] Plaintiff Campos asserts that Defendants never paid him for his last week of work and consequently owe him $130. Campos Decl. ¶ 23. While the NYLL expressly provides that employees are entitled to recover unpaid wages, N.Y. Lab. Law § 652, a genuine issue of material fact exists that precludes partial summary judgment as to liability from being granted on this claim. *See* Nesheiwat Dep. 104:11-105:10 (stating that Plaintiff Campos's assertion that he was not paid for his last week of work was "a hundred percent lie"). *See also Severino v. 436 West L.L.C.*, No. 13-cv-3096, 2015 WL 12559893, at *7 (S.D.N.Y. Mar. 19, 2015) (competing testimony sufficient to create a genuine dispute of fact).

[10] The FLSA provides that, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

[11] Section 142-2.2 of the New York Rules and Regulations states, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 *et seq.*" 12 N.Y.C.R.R. § 142-2.2.

Plaintiffs worked over forty hours). Defendants failed to pay them even the minimum wage. Therefore, the Court finds that Defendants failed to pay Plaintiffs the proper overtime rate.[12]

### B. Unlawful Deduction Claims

Plaintiffs also seek reimbursement for costs associated with gas and maintenance of their cars, which were used as delivery vehicles. "Both the FLSA and the NYLL require employers to reimburse their employees for costs associated with the purchase and maintenance of 'tools of the trade,' where such expenditures bring the employee's wages below the statutory minimum." *Wuzi Jiao v. Kitaku Japanese Rest., Inc.*, No. 16-cv-2694, 2020 WL 2527588, at *13 (E.D.N.Y. Mar. 13, 2020) (citing 29 C.F.R. § 531.35; 12 N.Y.C.R.R. § 146-2.7(c)), *report and recommendation adopted*, 2020 WL 2523109 (E.D.N.Y. May 18, 2020); *see also Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010). "Vehicles are considered 'tools of the trade' if 'employees are required to possess and utilize them in the course of their employment.'" *Canelas*, 2017 WL 1233998, at *13 (quoting *Guan Ming Lin*, 755 F. Supp. 2d at 511) (granting summary judgment on costs of tools of the trade claim where it was "undisputed that delivery persons employed by Defendants were required to use their own cars for deliveries, and that Defendants did not reimburse them for their gas and maintenance costs").

The Court finds that there is no genuine dispute of material fact that Plaintiffs had to use their cars to make deliveries and that Defendants did not compensate them for gas, mileage, or maintenance of their vehicles. *See* Lopez Decl. ¶ 23; Campos Decl. ¶ 22. Defendant Nesheiwat testified that Plaintiffs used their cars to make at least some pizza deliveries and that they were

---

[12] At his deposition, Defendant Nesheiwat asserted that he paid Plaintiff Lopez overtime wages in cash. Nesheiwat Dep. at 52:14-53:24. This further supports Plaintiff Lopez's testimony that he worked over forty hours a week. This does not create a genuine issue of material fact, however, because even assuming that Plaintiff Lopez was paid time-and-a-half his regular rate (which was between $5-7) that still would not have been the appropriate overtime rate (i.e. if Plaintiff Lopez was making $7 per hour when he should have been making $10.50 per hour, Defendants likely paid Plaintiff Lopez $10.50 per hour for overtime instead of $15.75 per hour).

not reimbursed for gas as a matter of policy. *See* Nesheiwat Dep. at 102:21-103:19 (testifying that Plaintiffs made some deliveries using their own cars and that he never reimbursed them for gas). Therefore, the Court grants partial summary judgment as to liability on the unlawful deduction claim.

### C.  Spread of Hours Claims

Under New York law, employers must pay "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required . . . for any day in which (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur." 12 N.Y.C.R.R. § 142-2.4. "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday." *Id.* § 142-3.16.

Because the Court concludes that there is a genuine issue of material fact as to whether Plaintiffs ever worked in excess of ten hours, *see supra* pp. 10-13, Plaintiffs are not entitled to partial summary judgment as to liability on their NYLL claims for "spread of hours" compensation.

### VI.    Wage Theft Prevention Act Claims

Plaintiffs also allege that Defendants failed to provide them with pay stubs or wage notices as required by the Wage Theft Prevention Act, N.Y. Lab. Law §§ 195(1) and 195(3).

### A.  Wage Notice Requirement Under N.Y. Lab. Law § 195(1)

N.Y. Lab. Law § 195(1) requires employers to provide employees, at the time of their hiring, with a written notice containing various information. The law also mandates employers "obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years." N.Y. Lab. Law § 195(1)(a). Here, Plaintiffs declared that Defendants

never provided them with the required notice when hired. Lopez Decl. ¶ 24; Campos Decl. ¶ 24. Defendant Nesheiwat also testified that he did not have any records reflecting when Plaintiffs started working for Defendants. Nesheiwat Dep. at 36:9-36:16, 58:4-59:7. There is no issue of material fact that Defendants failed to meet the NYLL's wage notice requirement.

### B. Pay Stub Requirement N.Y. Lab. Law § 195(3)

N.Y. Lab. Law § 195(3) requires employers to provide employees "with a statement with every payment of wages" listing various items. Plaintiffs declared that they never received such statements when paid. Lopez Decl. ¶ 19; Campos Decl. ¶ 18. Defendant Nesheiwat also testified that Defendants did not provide such statements when paying employees. Nesheiwat Dep. at 72:20-73:16. There is no issue of material fact that Defendants failed to comply with the pay stub requirement under the NYLL.

Thus, the Court grants partial summary judgment as to liability on Plaintiffs' Wage Theft Prevention Act claims.

### VII.   Liquidated Damages

"Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages . . . [unless] the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing its acts or omissions did not violate the FLSA.*" Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008); *see also* 29 U.S.C. § 216(b). The employer bears the burden of establishing that liquidated damages should not be awarded. *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997). "[B]ut the burden is a difficult one, with double damages being the norm and single damages the exception." *Herman*,

172 F.3d at 142 (citing *Reich*, 121 F.3d at 71). "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Id.*

A plaintiff is also entitled to liquidated damages pursuant to the NYLL. N.Y. Lab. Law §§ 198(1-a), 663(1). The NYLL was amended on November 24, 2009 to include a good faith standard, *see Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015); *see also* 2009 N.Y. Laws ch. 372 § 1, *amending* N.Y. Lab. Law § 198(1-a), and then again on April 9, 2011 to allow for a hundred percent liquidated damages, N.Y. Lab. Law § 198(1-a), *Inclan*, 95 F. Supp. 3d at 505.

"While the wording of the FLSA and the [current] NYLL liquidated damages provisions are not identical, there are no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (internal citations and quotation marks omitted). The Second Circuit therefore has "interpret[ed] the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct." *Id.* at 123. However, "Plaintiff is entitled to 'recover under the statute that provides the great[er] relief.'" *Underwood v. TAFSC Hous. Dev. Fund Corp.*, No. 18-cv-6664, 2019 WL 5485211, at *4 (S.D.N.Y. Oct. 25, 2019) (quoting *Ortega v. JR Primos 2 Rest. Corp.*, No. 15-cv-9183, 2017 WL 2634172, at *6 (S.D.N.Y. June 16, 2017) (alteration in original)).

Defendants have not met their burden in establishing that liquidated damages should not be awarded. They have said almost nothing regarding liquidated damages, except to say that "in the event that [] [P]laintiffs could prove their claims, [] [D]efendants would still have the opportunity to show that they did not act in bad faith" and that "[t]here is clearly a genuine issue of material fact regarding the conduct of [] [D]efendants." Defs.' Opp. at 9. Defendants

apparently misunderstand their burden of proof. It is *Defendants*' burden of proof to show that they acted in good faith and that they took active steps to ascertain the dictates of the FLSA and the NYLL and then attempted to comply with them.

Defendants have plainly failed to do so. Defendant Nesheiwat testified that he had always been aware of the FLSA requirements to pay minimum wage and overtime. Nesheiwat Dep. at 68:18-71:25. He also testified that he had heard of the NYLL "spread of hours" requirement but did not really know what it was. *Id.* at 72:2-72:7. Besides putting up a Department of Labor poster at the pizzeria and beginning to utilize time cards, Defendants took no affirmative actions to make sure they were in compliance with either the FLSA or the NYLL. *Id.* at 41:17-44:24, 70:3-71:11. In fact, it appears that the only reason Defendants began using time cards was due to a suggestion from the Department of Labor after an incident with another employee. Nesheiwat Dep. 44:4-44:16 (testifying that "the lady from the Labor Department told me the best way to . . . cover yourself [] [is to] go get time cards. So I listened to her and I got time cards."). The actions taken by Defendants are insufficient to satisfy their burden. *See Vasquez v. Ranieri Cheese Corp.*, No. 07-cv-464, 2010 WL 1223606, at *18 (E.D.N.Y. Mar. 26, 2010) (finding that defendant did not establish good faith under the FLSA where defendant asserted that "although not able to comprehend the [FLSA] laws, [he] had obtained a poster of such wage and hour laws" and "he somehow had a good faith reason not to read and implement the laws his poster-hanging noticed"); *see also Alonso Vazquez v. Azoulay*, 834 F. App'x 653, 655 (2d Cir. 2021) (summary order) (affirming district court decision to grant liquidated damages pursuant to the NYLL on motion for summary judgment where defendant had "not provided plain and substantial evidence of at least an honest intention to ascertain what the [law] requires and to comply with it." (internal citation and quotation marks omitted)).

The Court concludes that there is no genuine issue of material fact as to liquidated damages. Thus, the Court grants Plaintiffs' motion for partial summary judgment as to liability on their liquidated damages claims pursuant to either the FLSA or the NYLL, whichever is greater.

## VIII.   Prejudgment Interest

Plaintiffs also seek prejudgment interest. Under the FLSA, "prejudgment interest may not be awarded in addition to liquidated damages." *Begum v. Ariba Disc., Inc.*, No. 12-cv-6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (internal citations and quotation marks omitted). Thus, if Plaintiffs recover liquidated damages pursuant to FLSA, they are not entitled to prejudgment interest on their FLSA claims.

In contrast, under the NYLL, an employee with a successful wage claim is entitled to "prejudgment interest." N.Y. Lab. Law § 198(1-a). This is true even when a plaintiff is also awarded liquidated damages under the NYLL. *See, e.g.*, *Pineda v. Frisolino, Inc.*, No. 15-cv-3774, 2017 WL 3835882, at *13 (S.D.N.Y. Aug. 29, 2017). However, prejudgment interest only applies to the actual, compensatory damages, not to liquidated damages or damages recovered due to violations of wage statement or wage notice provisions. *See, e.g.*, *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017).

In New York, the pre-judgment interest rate is nine percent per year, N.Y. C.P.L.R. § 5004, and is "computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." *Id.* § 5001(b). "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all the damages from a single reasonable intermediate date." *Id.*; *see also Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 91 (2d Cir. 1998)

("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or a single reasonable intermediate date." (internal citation and quotation marks omitted)), *holding modified on other grounds by Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81 (2d Cir. 2001).

Plaintiffs are entitled to prejudgment interest, though the precise amount will have to be determined in a later proceeding.

## IX.    Attorneys' Fees and Costs

Finally, Plaintiffs seek attorneys' fees and costs pursuant to the FLSA and the NYLL. Both the FLSA and the NYLL are fee-shifting statutes entitling prevailing plaintiffs to recover attorneys' fees and costs. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-b), (1-d). Accordingly, Plaintiffs may submit a motion for attorneys' fees and costs, along with supporting documentation, to be reviewed by the Court.

## CONCLUSION

For the reasons herein, Plaintiff's motion for partial summary judgment as to liability is **GRANTED** in part and **DENIED** in part. The Court will schedule a status conference to discuss how the parties would like to proceed with the litigation within thirty (30) days of the date of this Opinion and Order.

**SO ORDERED.**

**Dated: March 25, 2021**
      **New York, New York**

_____
         **ANDREW L. CARTER, JR.**
         **United States District Judge**